UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| William Carrick Renshaw, III | ) | Case No. 06-11028C-13G |
| Shirlene Leth Renshaw, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Shirlene Leth Renshaw, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 07-2055G |
| | ) | |
| Charlie S. Hancock, d/b/a | ) | |
| High Point Sewing and Vacuum | ) | |
| Center, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OPINION

This adversary proceeding came before the court on February 10, 2009 for trial. John H. Boddie appeared for the Plaintiff and the Defendant appeared pro se. Having received and considered the evidence offered at the trial and the arguments presented on behalf of the parties, the court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.

## FACTS

On December 29, 2004, Shirlene Renshaw ("Plaintiff") entered into a layaway agreement with High Point Sewing and Vacuum Center ("HPSVC"), which is owned by Charlie Hancock ("Defendant"), for the purchase of a Baby Lock Ellegante sewing/embroidery machine ("Ellegante") for the price of $6,000. The parties agree that the transaction was originally intended to be a layaway transaction in which the Plaintiff would make payments on the Ellegante, but would not take possession of the Ellegante until the purchase price had been paid in full. The Plaintiff made a total of $2,720 in layaway payments between December 29, 2004 and October 29, 2005, leaving the Plaintiff's layaway balance at $3,280 entering November 2005.

The parties dispute what happened next. The Defendant contends that on November 23, 2005, Peggy Winslow, the manager of HPSVC, agreed to provide the Plaintiff with a "loaner" Ellegante due to the fact that the Plaintiff had sewing projects that she needed to complete and could not be approved to purchase an

Ellegante on credit through Baby Lock. The Defendant presented as evidence a receipt dated November 23, 2005 that shows an Ellegante with serial number J5B115631 issued to Plaintiff as a loaner (the "Loaner Receipt"). The Plaintiff denies the authenticity of the Loaner Receipt. According to the Plaintiff, no events transpired on November 23. Instead, the Plaintiff testified that on November 26, 2005, she had a discussion with Ms. Winslow about changing the nature of their transaction so that the Plaintiff could take the Ellegante home.[1] The Plaintiff stated that the parties agreed to alter their agreement so that the Plaintiff would take possession of the Ellegante and then make installment payments of $300/month until the balance of the purchase price was paid. The Plaintiff offered as evidence a receipt indicating she had traded in a Baby Lock Ellure model machine, with $900 applied towards the price of the Ellegante. The Plaintiff also offered a photograph of the new Ellegante which was made in her home after she took the new Ellegante home. Although there was some dispute as to whether the Ellegante provided to her by HPSVC was new or not, the weight of the evidence shows that the Plaintiff did receive a new Ellegante in

---

[1] The conversation apparently came about due to an email the Plaintiff had recently received from Baby Lock about machines being available from Baby Lock on credit for $99/month.

November of 2005 under the arrangement described by the Plaintiff.

After taking possession of the new Ellegante, the Plaintiff made payments totaling $2,059.91 between November of 2005 and June 16, 2006.[2] From December 2005 through May 2006, Plaintiff's payments averaged almost exactly $300/month.[3] By the end of June 2006, the Plaintiff owed the Defendant a total of $1,020.09.[4] No further payments were made after June 2006. On September 5, 2006, the Plaintiff filed a Chapter 13 bankruptcy petition.

The Plaintiff remained in possession of the Ellegante until September 16, 2006. On that date, the Plaintiff brought the Ellegante to HPSVC for service because it was malfunctioning. When the Plaintiff returned on September 23, 2006 to pick up the Ellegante, she was told that the Ellegante was in need of further repairs. The Defendant also told the Plaintiff that due to her recent bankruptcy filing, he was unwilling to loan her another

---

[2] Some of these "payments" came in the form of credit for work the Plaintiff's husband performed for HPSVC repairing vacuum cleaners.

[3] $1,804.91 in payments made over 6 months = $300.82 average.

[4] Total owed = Ellegante purchase price of $6,000 - $2,059.91 in payments - $900 credit for trade-in of the Plaintiff's Baby Lock Ellure + an additional layaway purchase of $700 for "Anita Goodesign" on March 15, 2006. No evidence was offered at trial as to whether the Anita Goodesign merchandise was ever held on layaway.

Ellegante, and that she would need to pay the remaining balance in order to take an Ellegante home. The Defendant did offer to allow the Plaintiff to use the money she had already paid as full payment on a Baby Lock Esante model sewing/embroidery machine ("Esante").[5] The Defendant also offered to allow the Plaintiff to return the Esante and pay the remaining balance in exchange for an Ellegante at any time before the end of 2006. The Plaintiff decided to take the Esante home because she was working on a large order, but denies that she agreed to accept an Esante in lieu of the Ellegante she earlier had received.

On October 4, 2006, the Plaintiff's attorney, John H. Boddie, sent the Defendant a letter informing him that he was in violation of the automatic stay and requesting a return of the Ellegante. On October 5, 2006, The Defendant responded that the Plaintiff was in possession of the Esante that she had paid for in full and reiterated that the Plaintiff could exchange the Esante for an Ellegante if she paid a balance of $1,240. On February 7, 2007, Mr. Boddie again wrote the Defendant requesting a return of the Ellegante, this time indicating that the Plaintiff would return the Esante and allow the Defendant a claim in the Chapter 13 case. There was no further response from the

---

[5] The Esante is a lower-end model compared to the Ellegante.

Defendant and the Plaintiff filed this action on November 9, 2007.

## DISCUSSION

1. Ownership of the Ellegante

A layaway contract is "any contract for the sale of goods in which the seller agrees with the purchaser, in consideration for the purchaser's payment of a deposit, down payment, or similar initial payment, to hold identified goods for future delivery upon the purchaser's payment of a specified additional amount, whether in installments or otherwise." N.C. Gen. Stat. § 25-2-106(1). There is no question that the original agreement made between the parties on December 29, 2004 was a layaway contract. The agreement continued as a layaway until November 26, 2005.

While the parties dispute what happened on that date, the court finds that the Plaintiff took possession of a new Ellegante, to which the Defendant intended to retain title, with the Plaintiff to continue making installment payments of $300 per month to complete the purchase. Although this transaction was couched as a layaway and "loaner" with the Defendant retaining title, North Carolina courts "regard the substance of a transaction, rather than its outward appearance, as controlling." Western Auto Supply Co. v. Vick, 277 S.E.2d 360, 366 (N.C. 1981). The substance of the transaction was that of a sale on credit –

the Plaintiff took possession of the Ellegante as a buyer, not a borrower, and agreed to make payments towards the balance owed on the purchaser price.[6]  Once the Plaintiff was allowed to take possession of the Ellegante, there could no longer be a layaway because the Defendant was no longer holding identified goods for future delivery, as is required for a layaway contract.  <u>See</u> N.C. Gen. Stat. § 25-2-106(1).  The Ellegante was delivered to the Plaintiff in exchange for continuing payments in the future.  Furthermore, regardless of whether the Defendant intended to retain title to the Ellegante, under N.C. Gen. Stat. § 25-2-401(1), "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest."  N.C. Gen. Stat. § 25-2-401(1).  The result is that a retention of title by the Defendant would result in the Defendant having, at most, a security interest in the Ellegante after delivery to the

---

[6] While the substance of the transaction may have been different if the Plaintiff merely had been allowed to borrow an Ellegante for a week or two, such was not the case here.  The Plaintiff retained possession of the Ellegante for almost ten months.  It is highly unlikely that the Defendant would allow the Plaintiff to borrow and keep a new $6,000 machine for ten months.  Furthermore, had the Plaintiff made all payments under the arrangement agreed to by the parties, the Plaintiff would have simply retained possession of the Ellegante rather than exchange it for a new one.

Plaintiff.[7]  The November 2006 transaction had the effect of passing title of the Ellegante to the Plaintiff with the Defendant's interest being limited to a possible security interest.[8]

As to whether the November 2005 transaction did, in fact, give rise to a security interest in the Ellegante, no such security interest ever attached to the machine.  N.C. Gen. Stat. § 25-2-401(1) <u>allows</u> for the reservation of a security interest.  However, in order for a security interest to attach to collateral, one of the conditions that must be met is for the debtor to authenticate a security agreement.  N.C. Gen. Stat. § 25-9-203.  A "security agreement" is "an agreement that creates or provides for a security interest."  N.C. Gen. Stat. § 25-9-102(a)(76).  "Authenticate" means to sign or otherwise indicate the identity of a person adopting or accepting a record.  N.C. Gen. Stat. § 25-9-102(a)(7).  The only evidence introduced that could arguably constitute a security agreement is the Loaner Receipt.  Even assuming, arguendo, that the Loaner Receipt is a

---

[7] Where, as here, there is no explicit agreement as to when title passes, "title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods . . . ."  N.C. Gen. Stat. § 25-2-401(2).

[8] N.C. Gen. Stat. § 25-1-201(35) defines "security interest" as "an interest in personal property or fixtures which secures payment or performance of an obligation."

-8-

security agreement, there is no indication that the Loaner Receipt was authenticated by the Plaintiff as required by N.C. Gen. Stat. § 25-9-203. In fact, there is a line identified as "Customer's Signature" on the Loaner Receipt that is left blank. Where a security agreement is not authenticated, no security interest is created. Little v. Orange County, 229 S.E.2d 823, 825 (N.C. App. 1976). Therefore, the Defendant has no security interest in the Ellegante and is not a secured creditor of the Plaintiff.

    2.   Claim for Unfair and Deceptive Trade Practices

The Plaintiff seeks recovery based on a claim of unfair and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, et. seq. (the "UDTPA"). The required elements to establish a prima facie claim for unfair trade practices are: "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). The UDTPA defines "commerce" broadly, as it includes "all business activities, however denominated." Id. There is no question that the Plaintiff has established the second and third elements of a UDTPA claim. The Defendant's actions occurred during the course of operation of his business,

HPSVC, and were therefore in or affecting commerce. The Plaintiff was clearly injured, as she was denied the use of the Ellegante that belonged to her.[9]

The only remaining question is whether the Defendant committed an "unfair or deceptive act or practice" in refusing to return the Ellegante. "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Dalton, 548 S.E.2d 711. Under North Carolina law, proof of an independent tort is sufficient to make out a separate claim under the UDTPA. See Sara Lee Corp. v. Carter, 519 S.E.2d 308, 311-12 (N.C. 1999) (finding that the breach of a fiduciary duty of an employee also gave rise to a UDTPA claim); Drouillard v. Keister Williams Newspaper Servs., Inc., 423 S.E.2d 324, 326-27 (N.C. App. 1992) (violation of Trade Secrets Protection Act may also be a violation of the UDTPA).

Here, the independent tort that arises from the Defendant's conduct is the tort of conversion. "Conversion is defined as: (1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." Di Frega v. Pugliese, 596 S.E.2d 456, 463 (N.C. App. 2004). "The

---

[9] While the Plaintiff did have possession of an Esante, the testimony shows that it was a used machine that did not work well and was a lesser model than the Ellegante.


essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner . . . and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act." Gallimore v. Sink, 218 S.E.2d 181, 183 (N.C. App. 1975) (quoting 89 C.J.S. Trover and Conversion § 3, pp. 533-34). "[T]he general rule is that there is no conversion until some act is done which is a denial or violation of the plaintiff's dominion over or rights in the property." Id. (quoting 18 Am.Jur.2d, Conversion, § 1, p. 158). There is no question that the Defendant exercised unauthorized ownership of the Plaintiff's property to the exclusion of her rights as owner when he refused to return the Ellegante. Therefore, when the Defendant refused to return the Ellegante, he wrongfully deprived the Plaintiff of her rights in it. The result is that the Plaintiff has satisfied the requirements for the tort of conversion.

The Defendant's only defense to a finding of conversion is that he, in good faith, believed that he was the true owner of the Ellegante and entitled to possession. Although North Carolina courts do not appear to have addressed whether mistake is a defense to conversion, courts in other jurisdictions have held that it is not. See e.g., Taylor v. Forte Hotels Int'l, 1

Cal.Rptr.2d 189, 192 (Cal. App. 1991) ("Conversion is the wrongful exercise of dominion over the personal property of another. The act must be knowingly or intentionally done, but a wrongful intent is not necessary. Because the act must be knowingly done, neither negligence, active or passive, nor a breach of contract, even though it results in injury to, or loss of, specific property, constitutes a conversion. It follows therefore that mistake, good faith, and due care are ordinarily immaterial, and cannot be set up as defenses in an action for conversion.") (internal citations and quotations omitted); First Union Nat. Bank v. New York Life Ins. and Annuity Corp., 152 F.Supp.2d 850, 855 (D. Md. 2001) (intent required for conversion "is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights . . . A mistake of law or fact is no defense.") (quoting Keys v. Chrysler Credit Corp., 494 A.2d 200 (Md. 1985)); Dice v. White Family Cos., 878 N.E.2d 1105, 1111 (Ohio App. 2007) (neither motive nor mistake is a defense to a claim of conversion); Morey v. Page, 802 S.W.2d 779, 786 (Tex. App. 1990) (in an action for conversion, it is no defense that defendant acted in complete innocence and with perfect good faith since mistake as to ownership is not defense to claim of conversion); Labbe v.

-12-

Premier Bank, 618 So.2d 45, 46 (La. App. 1993) ("Issues of fault, intent, negligence, knowledge or ignorance, and/or good faith are not involved in actions for tortious conversion. A mistake of law or fact is no defense."). Furthermore, North Carolina courts have held that good faith is not a defense for violation of the UDTPA. Gray v. North Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000). Thus, the fact that the Defendant might have believed in good faith that he was the rightful owner of the Ellegante is no defense to the underlying tort of conversion. The existence of the tort of conversion establishes an unfair act or practice. Therefore, the Plaintiff has established the three necessary elements for a claim under the UDTPA.

    3. Relief to be Granted

The Plaintiff's prayer for relief includes a prayer for the recovery of monetary damages which the Plaintiff asserts should be trebled pursuant to the UDTPA. The court has concluded that an award of monetary damages for violation of N.C. Gen. Stat. § 75-1.1 is permissible and appropriate in this proceeding. The evidence establishes that the Plaintiff demanded the return of her Ellegante machine in September of 2006, which was refused by the Defendant. Additional demands for the return of the machine followed, which also were refused by the Defendant, prompting the

filing of this proceeding. When Plaintiff's Ellegante machine was not returned following the filing of this proceeding, the Plaintiff acquired another Ellegante machine from another source. Having been deprived of the possession of her Ellegante machine for more than two years and having acquired another machine, the court concludes that the Plaintiff should be awarded as damages the value of the Ellegante machine as of September of 2006, when the machine was converted by the Defendant, which the court finds was $4,800. Additionally, the court concludes that such damages should be trebled pursuant to N.C. Gen. Stat. § 75-16.[10] The court further concludes that the Plaintiff's prayer for an award of attorney's fees also should be granted. N.C. Gen. Stat. § 75-16.1 provides that reasonable attorney's fees may be allowed upon a finding that the defendant "has willfully engaged in the act or practice, and there was an unwarranted refusal by the party to resolve fully the matter which constitutes that basis of the suit." In order to recover attorney's fees, a plaintiff must

---

[10]N.C. Gen. Stat. § 75-16 provides: "If any person shall be injured . . . by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person . . . so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." Once a plaintiff has established the right to recover damages under N.C. Gen. Stat. § 75-1.1, the award of treble damages pursuant to this section is mandatory. Peterson v. Bozzano, 183 B.R. 735, 738 (Bankr. M.D.N.C. 1995).

prove by a preponderance of the evidence: (1) the plaintiff is a prevailing party; (2) the defendant willfully engaged in a prohibited act; and (3) that the defendant made an unwarranted refusal to fully resolve the matter. <u>Llera v. Security Credit Systems, Inc.</u>, 93 F.Supp.2d 674, 676 (W.D.N.C. 2000). An act is "willfully" done for the purpose of awarding attorney's fees if done voluntarily and intentionally with the view of doing injury to another. <u>Standing v. Midgett</u>, 850 F.Supp. 396, 404 (E.D.N.C. 1993). In determining whether a defendant's refusal to fully resolve a matter is unwarranted, courts look to the defendant's efforts to settle the matter and the reasonableness of those efforts. <u>Llera</u>, 93 F.Supp.2d at 679. Here, there is no question that the Plaintiff is the prevailing party, as she has been awarded possession of the Ellegante. The Defendant voluntarily and intentionally deprived the Plaintiff of the Ellegante, which shows that he willfully engaged in the prohibited act of conversion. The Defendant had multiple opportunities to settle the matter before trial, but continued to unreasonably contend that he would accept nothing short of full payment in exchange for the Ellegante, and therefore the Defendant's course of action shows an unwarranted refusal to resolve the matter. Because the Plaintiff has met the three requirement of N.C. Gen. Stat. § 75-16.1, attorney's fees will be awarded. Plaintiff's attorney is

hereby allowed 14 days from the date of this opinion within which to submit an itemized application for the award of attorney's fees setting forth a description of the services provided in connection with this proceeding, the date on which each such service was provided, the amount of time expended by the attorney in providing each such service and the usual and customary hourly rate charged by the attorney for such services. The application shall be verified by the attorney and shall be served on the Defendant when the application is filed with the court. The Defendant shall have 14 days after the date on which the application is mailed to him within which to file and serve on Plaintiff's attorney any objections to such application. After the court has decided upon the amount of the attorney's fee to be awarded, a final judgment will be entered awarding the Plaintiff damages in the amount of $14,400, as well as the attorney's fee decided upon by the court.[11]

This 5th day of May, 2009.

_William L. Stocks_
WILLIAM L. STOCKS
United States Bankruptcy Judge

---

[11] The complaint does not contain a claim for violation of the automatic stay and the court therefore has not addressed such a claim.

PARTIES IN INTEREST

Shirlene Leth Renshaw
1045 W. 4400 S #A
Riverdale, UT 84405

John H. Boddie, Esq.
2302 W. Meadowview Road, Suite 124
Greensboro, NC 27407

Charlie S. Hancock
P.O. Box 1268
Lexington, NC 27293

Michael D. West, Bankruptcy Administrator